**INDEPENDENT LIVING AIDS, INC., and Marvin Sandler, Plaintiffs,**

v.

**MAXI–AIDS, INC., Harold Zaretsky, Mitchell Zaretsky, Elliot Zaretsky and Pamela Zaretsky–Stein, Defendants.**

No. 95CV656(ADS)(ARL).

United States District Court, E.D. New York.

July 5, 2002.

See, also, 25 F. Supp.2d 127.

The Dweck Law Firm, LLP, Jack S. Dweck, Richard A. Hubell, of counsel, New York City, for Plaintiffs.

Michael D. Solomon, Levittown, NY, for Defendants Maxi–Aids, Inc., Harold Zaretsky, Elliot Zaretsky.

Berkman, Henoch, Peterson & Peddy, P.C., Joseph E. Macy, of counsel, Garden City, NY, for Defendant Mitchell Zaretsky.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arose out of claims by the plaintiffs Independent Living Aids, Inc. ("ILA") and Marvin Sandler ("Sandler") (collectively, the "plaintiffs") against the defendants Maxi–Aids, Inc. ("Maxi–Aids"), Harold Zaretsky ("H.Zaretsky"), Mitchell Zaretsky ("M.Zaretsky"), Elliot Zaretsky ("E.Zaretsky") and Pamela Zaretsky–Stein ("Zaretsky–Stein"). In an action commenced in 1995, the plaintiffs alleged that the defendants engaged in copyright infringement, common-law trademark infringement, unfair competition, false advertising and deceptive trade practices. The plaintiffs and the defendants compete in the mail-order business specializing in products for the blind, visually impaired and physically disabled.

In 1997, a jury awarded the plaintiffs damages, for, among other things, trademark infringement arising out of Maxi–Aids' use of the "ILA logo" in its advertising, catalog and sales program. As a result of the jury's verdict, the Court issued an injunction permanently enjoining the defendants from using the plaintiffs' trademark in connection with the sale of their products. Presently before the Court is an application to hold the defendants Maxi–Aids, H. Zaretsky and E. Zaretsky (collectively, the "defendants") in civil contempt for the alleged violation of a preliminary injunction recently issued by the Court. In addition, the defendants move to vacate or modify the permanent injunc-

tion and to recover costs for defending a previous motion for civil contempt.

## I. BACKGROUND

### A. The Underlying Proceedings

On February 15, 1995, the plaintiffs filed a complaint in which they alleged that the defendants engaged in copyright infringement, common-law trademark infringement, unfair competition, false advertising and deceptive trade practices in connection with the sale of products for the blind, visually impaired and physically disabled. The defendants answered the complaint and proceeded with discovery. After discovery was completed, a jury trial before this Court commenced on November 5, 1997.

On December 8, 1997, the jury rendered a verdict in favor of the plaintiffs on the following causes of action: (1) a federal copyright infringement claim based on Maxi–Aids "willfully" infringing ILA's copyrights in its 1985 through 1995 catalogs by copying original product listings; (2) a federal trademark/service-mark claim arising from Maxi–Aids' use of the "ILA logo" in its advertising, catalog and sales program, in a manner likely to cause confusion as to the source; (3) a claim arising under New York General Business Law ("GBL") § 349 for willful deceptive acts and practices with regard to the advertising and sale of its products; and (4) willful false advertising in violation of GBL § 350. The jury expressly determined that the plaintiffs "proved that, prior to any copying of the terms, the plaintiffs had so used [the term 'Independent Living Aids'] ... so that it developed a secondary meaning, so as to associate that term with the plaintiffs." *Independent Living Aids v. Maxi–Aids*, No. 95–656, Verdict Sheet, at 3 (E.D.N.Y. Dec. 8, 1997). The jury then awarded compensatory damages in the amount of $2,400,000.06.

However, the jury found in favor of the defendants on the following causes of actions: (1) a federal trade dress infringement claim regarding their "Slimline Lo–Vision watches"; (2) federal trademark/service-mark claims regarding the terms "Independent Living," "ILA," "Do More Products," "Maxi–Aids and Appliances for Independent Living" and "Maxi–Aids Products for Independent Living"; and (3) a state law claim for intentional interference with economic benefits relating to bidding procedures. Finally, the jury rejected the counter-claim brought by the defendants against Sandler for libel arising out of a letter Sandler wrote to *The Braille Monitor*.

On July 25, 1998, the Court denied the defendants' motion for judgment as a matter of law and motion for a new trial pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure, respectively. On October 24, 1998, the Court issued a permanent injunction against the defendants forbidding them from using the plaintiffs' trademark in connection with the sale of their products. *See* Counter–Proposed Judgment of Permanent Injunction of *Independent Living Aids v. Maxi–Aids, Inc.*, 95CV656 at 4 (E.D.N.Y. Oct. 24, 1998) (the "October 24, 1998 Judgment"). The October 24, 1998 Judgment provided in pertinent part:

> **ORDERED, ADJUDGED AND DECREED:** that the Plaintiff Independent Living Aids, Inc. is the owner of a valid common law trademark consisting of inverted triangles with the letters ILA inside of a diamond to the left of said triangles and the phrase "Independent Living Aids"; and it is further

> **ORDERED, ADJUDGED AND DECREED:** that Defendant Maxi–Aids, Inc., Mitchel Zaretsky, Elliot Zaretsky and Pamela Zaretsky Stein, and each of them and their respective agents, offi-

cers, representatives, servants and employees and all persons acting in concert, or participating with them, be and they hereby are permanently enjoined from using the aforesaid ILA logo in connection with the sale, offering for sale, distribution, advertising or promotion of any of their products. . . .

*Id.*

On November 25, 1998, the Court issued a money judgment against the defendants in the sum of $2,779,806.96 with post-judgment interest to accrue at the rate of 4.16 %. The parties eventually settled in the amount of $1,600,000 in full satisfaction of the judgment.

## B. The First Motion for Contempt

On February 28, 2001, by order to show cause, the plaintiffs moved to hold the defendants in contempt. The basis for the contempt motion was that the defendants allegedly engaged in a "deceptive business practice" in violation of the October 24, 1998 Judgment. In particular, the plaintiffs alleged that the defendants engaged in a complicated scheme by which they formed a domestic charity called "Center for the Blind in Israel" in order to purchase braille typewriters, known as "braillers", from a South African company.

On June 11, 2001, the Court orally denied the motion for contempt with prejudice because the alleged violation did not fall within the terms of the October 24, 1998 Judgment. The Court also directed the parties to submit proposed language modifying the October 24, 1998 Judgment. On January 24, 2002, the Court changed the language "sale of their products" in the second to last decretal paragraph in the October 24, 1998 Judgment to "sale of any knives or watches". *See* Amended Judgment of Permanent Injunction of *Independent Living Aids v. Maxi–Aids, Inc.*, 95CV656 at 4 (E.D.N.Y. Jan. 24, 2002) (the "January 24, 2002 Judgment"). However,

the Court kept the two above-noted paragraphs concerning the plaintiffs' trademark intact. *See id.*

## C. The Second Motion for Contempt

On March 12, 2002, by order to show cause, the plaintiffs moved to hold the defendants is contempt based upon alleged violations of the October 24, 1998 Judgment and the January 24, 2002 Judgment. In particular, the plaintiffs argued that the two judgments permanently enjoin the defendants from using the phrase "Independent Living Aids". The plaintiffs contended that the defendants were using this phrase in direct violation of these judgments.

As examples, the plaintiffs cited four alleged violations involving the use of the phrase "Independent Living Aids": (1) Maxi–Aids' use on its Internet web page of the phrase "Maxi–Aids—Independent Living Aids for blind, low vision, visually impaired, deaf disable . . ."; (2) Maxi–Aids' use on the Internet of the phrase "Maxi–Aids.com Products for Independent Living"; (3) Maxi–Aids' use on its Internet home page of the phrase "Maxi–Aids. com—Independent Living Aids Catalog with products for blind, low vision, visually impaired, and individuals with special needs"; and (4) Maxi–Aids' use in its search engines on the Internet of the phrase "Independent Living Aids". *See* Affidavit of Marvin Sandler, the President of ILA, dated March 11, 2002 submitted in support of the motion for contempt ¶ 8, 10, 14, 15 (the "Sandler Affidavit").

On March 15, 2002, the plaintiffs and the defendants appeared before this Court pursuant to the order to show cause. At that time, the Court heard oral argument on the plaintiffs' motion for civil contempt. After hearing from both parties, the Court advised the defendants that it would issue a preliminary injunction enjoining the defendants from using the phrase "Indepen-

dent Living Aids" until a final determination of these proceedings.

On March 29, 2002, the defendants filed a cross-motion seeking to vacate or modify the January 24, 2002 Judgment on the ground that it is not specific or detailed enough in its terms. In addition, the defendants moved to recover their attorneys' fees and costs associated with defending the first motion for civil contempt which was filed on February 28, 2001.

On April 4, 2002, the Court issued a preliminary injunction which provided that the defendants are "hereby restrained and enjoined, pending the final determination of this proceeding and further order of this Court, from using the phrase and name 'Independent Living Aids' in the sale or marketing of their products, in any shape, form or manner whatsoever...." *Independent Living Aids v. Maxi–Aids, Inc.*, 95CV656, Preliminary Injunction, at 2 (E.D.N.Y. Apr. 4, 2002).

On April 23, 2002, the plaintiffs sent the Court a letter requesting a conference on an emergency basis regarding the defendants alleged violation of the preliminary injunction. In particular, the plaintiffs alleged that Maxi–Aids continues to use the phrase "Independent Living Aids" on 20 out of 29 search engines. On April 30, 2002, the Court held a conference to discuss the plaintiffs' allegations. At the conference, counsel to Maxi–Aids argued that after the March 15, 2002 conference, Maxi–Aids removed the phrase "Independent Living Aids" from all of its websites and their metatags. In addition, Maxi–Aids stated that they have no control over the actions of the search engine companies.

In further support of their compliance with the order of the Court, Maxi–Aids submitted an affidavit from one Vladimir Ereshkin, the art director for Maxi–Aids, who stated that he was responsible for eliminating the phrase "Independent Living Aids" from the company's HTMLs and from the Maxi–Aids Super Mall website. The Ereshkin Affidavit stated that all of the changes were completed no later than March 20, 2002. Further, the Ereshkin Affidavit stated that there is no direct mechanism for a company with a web-site to alert a search engine company of any changes made to their website and that Maxi–Aids has no control over when and how often the search engine companies update their databases.

On May 24, 2002, the Court rendered an oral decision denying the plaintiffs' motion for civil contempt based upon the alleged violation of the permanent injunctions. In particular, the Court found that the language in the permanent injunctions was not a clear and unambiguous order. Before addressing the issue of an alleged violation of the preliminary injunction of April 4, 2002, the defendants raised the contention that the Court lacked jurisdiction to issue the preliminary injunction because there was a pending notice of appeal from the part of the January 24, 2002 Judgment which changed the language "sale of their products" in the second to last decretal paragraph in the October 24, 1998 Judgment to "sale of any knives or watches". In addition, the defendants renewed their argument that the Court cannot enjoin the defendants from using the phrase "Independent Living Aids" because this term is generic in the parties' field of business.

After hearing from both parties on the issues of jurisdiction and "genericness", the Court instructed them to submit letter briefs on the following issues: (1) Whether the notice of appeal filed by the plaintiffs deprived the Court of jurisdiction to issue the preliminary injunction on April 4, 2002?; and (2) If the Court had jurisdiction to issue the preliminary injunction, whether the term "Independent Living

Aids" is generic and therefore not entitled to trademark protection?

The Court will address the following issues separately: (1) the jurisdiction of the Court to issue the preliminary injunction; (2) the "genericness" of the phrase "Independent Living Aids"; (3) the modification of the permanent injunction of October 24, 1998; and (4) the defendants' right to recover attorneys' fees and costs incurred in the first motion for civil contempt.

## II.  DISCUSSION

### A.  The Subject Matter Jurisdiction

■ In their letter brief of June 7, 2002, the defendants concede that the Court had jurisdiction to issue the preliminary injunction of April 4, 2002. However, because parties cannot confer subject matter jurisdiction where the Constitution and Congress have not, the Court must assure itself that the case is properly within its subject matter jurisdiction. *See Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) (per curiam). As such, the Court will analyze whether it had jurisdiction to issue the preliminary injunction.

It is well-settled that the "filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 378–79, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *New York State Nat'l Organization for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir.1989) (stating that the filing of a notice of appeal "only divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal.").

In this case, the plaintiffs have appealed from the part of the January 24, 2002 Judgment which changed the language "sale of their products" in the second to last decretal paragraph in the October 24,

1998 Judgment to "sale of any knives or watches". *See Independent Living Aids v. Maxi–Aids*, No. 95–656, Plaintiffs' Notice of Appeal (E.D.N.Y. Jan. 30, 2002). Because the pending appeal does not concern the use of the phrase "Independent Living Aids" as a trademark, the Court has jurisdiction to address this aspect of the case.

In addition, it should be noted that courts have jurisdiction to "supervise the enforcement of its injunction and to preserve the status quo pending appeal." *Cullman Ventures, Inc., v. Columbian Art Works*, No. 89–312, 1989 WL 94902, *3 (S.D.N.Y. July 28, 1989) (citation omitted). "In a contempt proceeding, the questions relate solely to the directives in the order and the refusal of the party to comply with them, issues that are entirely distinct from the issues decided in the order itself." *Red Ball Interior Demolition Corp. v. Palmadessa*, 947 F.Supp. 116, 120 (S.D.N.Y. 1996). Because the present notice of appeal does not affect the Court's jurisdiction to enforce unrelated sections of the permanent injunction, the Court had jurisdiction to issue the preliminary injunction forbidding the defendants from using the phrase "Independent Living Aids" in the sale or marketing of their products.

■ Although the defendants concede the issue of jurisdiction, they attack the preliminary injunction on the grounds that it was issued erroneously and without a sufficient basis. This argument lacks merit because the validity of the preliminary injunction is not an appropriate consideration in a contempt proceeding.

"Under the collateral bar doctrine, a party may not challenge a district court's order by violating it. Instead, he must move to vacate or modify the order, or seek relief in [the Second Circuit]. If he fails to do either, ignores the order, and is held in contempt, he may not challenge the order unless it was transparently invalid

or exceeded the district court's jurisdiction." *United States v. Cutler*, 58 F.3d 825, 832 (2d Cir.1995) (citations omitted); *United States v. Rylander*, 460 U.S. 752, 756, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) ("[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.") (internal quotation marks and citations omitted). To invoke the "transparently invalid" exception, a defendant "must make some good faith effort to seek emergency relief from the appellate court, or show compelling circumstances, such as a need to act immediately, excusing the decision not to seek some kind of emergency relief." *Cutler*, 58 F.3d at 832.

In this case, it is undisputed that the Court had jurisdiction to issue the preliminary injunction on April 4, 2002. In addition, the preliminary injunction is not "transparently invalid" because the plaintiffs have not sought emergency relief from the Second Circuit or shown compelling circumstances for why they could not comply with the preliminary injunction immediately. In fact, they submitted an affidavit stating that they immediately complied with the preliminary injunction. Furthermore, the defendants did not move to vacate or modify the preliminary injunction. As such, the validity of the preliminary injunction is not an appropriate consideration in this contempt proceeding. Also, because the "genericness" argument attacks the validity of the preliminary injunction, this argument must fail for the same reasons.

■ Even assuming that the Court could entertain the "genericness" argument, collateral estoppel prevents the defendants from re-litigating the issue in this proceeding. For collateral estoppel to apply, a court must determine that: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *NLRB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir.1999).

On December 8, 1997, a jury found that the plaintiffs owned a trademark for the phrase "Independent Living Aids". *See Independent Living Aids v. Maxi–Aids*, No. 95–656, Verdict Sheet, at 3 (E.D.N.Y. Dec. 8, 1997) (finding that the plaintiffs "proved that, prior to any copying of the terms, the plaintiffs had so used [the term 'Independent Living Aids'] . . . so that it developed a secondary meaning, so as to associate that term with the plaintiff. . . ."). The plaintiffs' ownership of a trademark for the phrase "Independent Living Aids" is the precise issue that the defendants now challenge. This issue was actually litigated and decided by a jury. The defendants had a full and fair opportunity to litigate this issue at trial and lost. Also, the jury's finding was required for the Court to issue the permanent injunction on October 24, 1998 enjoining the defendants from infringing upon the plaintiffs' trademark. Accordingly, the elements of collateral estoppel are met.

In addition, the defendants did not appeal this finding. As such, collateral estoppel applies and bars the defendants from re-litigating the issue in this civil contempt proceeding. To permit the defendants to now re-litigate an issue that has already been decided and not appealed would allow the defendants to avoid any such order issued by the Court. Accordingly, the jury's verdict on this issue is binding. As such, the Court refers this matter to United States Magistrate Judge Arlene R. Lindsay to hold a hearing on the issue of whether the defendants violated

the preliminary injunction of April 4, 2002 and to prepare a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## B. The Modification of the Permanent Injunction

Rule 60(b) provides in pertinent part that:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding ... [when] it is no longer equitable that the judgment should have prospective application.... A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

Fed.R.Civ.P. 60(b)(5). "The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." *New York State Ass'n of Retarded Children, Inc. v. Carey*, 706 F.2d 956, 967 (2d Cir.1983). "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *Id.* (internal quotation marks and citations omitted). *See also United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562 (1968) (stating that a district court has the power to modify an injunction so as to achieve the purposes of the original injunction where specific facts and circumstances show that those purposes have not been achieved).

The defendants argue that the January 24, 2002 Judgment, which provides permanent injunctive relief, does not provide sufficient details of what acts are forbidden. Because of this ambiguity, the defendants have faced two motions for contempt which allege that they failed to comply with the permanent injunction. The defendants argue that the January 24, 2002 Judgment should be modified to define the plaintiffs' common law trademark to consist solely of the distinctive mark that includes the inverted triangles, the letters ILA and the diamond.

At present, the January 24, 2002 Judgment does not clearly define the plaintiffs' trademark and does not state with particularity whether the defendants are enjoined from using the phrase "Independent Living Aids". Because the jury found that the plaintiffs own a valid trademark for the phrase "Independent Living Aids", the Court modifies the January 24, 2002 Judgment consistent with the jury's verdict. In particular, the Court amends the decretal paragraphs on page 4 of the January 24, 2002 Judgment to read as follows:

> **ORDERED, ADJUDGED AND DECREED:** that the Plaintiff Independent Living Aids, Inc. is the owner of a valid common law trademark consisting of inverted triangles with the letters ILA inside of a diamond to the left of said triangles and **a valid common law trademark for** the phrase "Independent Living Aids"; and it is further

> **ORDERED, ADJUDGED AND DECREED:** that Defendant Maxi–Aids, Inc., Mitchel Zaretsky, Elliot Zaretsky and Pamela Zaretsky Stein, and each of them and their respective agents, officers, representatives, servants and employees and all persons acting in concert, or participating with them, be and they hereby are permanently enjoined from using the aforesaid **(1) the ILA** logo **which consists of the inverted triangles with the letters ILA inside of a diamond to the left of said triangles and (2) the phrase "Independent Living Aids"** in connection with the sale, offering for sale, distribution, ad-

vertising or promotion of any of their products....

(Amendments in bold).

## C. The First Contempt Motion

### 1. As to the Attorneys' Fees

Rule 54 provides in pertinent part that "[u]nless otherwise provided by statute or order of the Court, the motion [for attorney's fees] must be filed and served no later than 14 days after entry of judgment...." Fed.R.Civ.P. 54(d)(2)(B). It is only a final judgment that starts the fourteen day filing period. Fed.R.Civ.P. 54(a) (" 'Judgment' as used in these rules includes a decree and any order from which an appeal lies."). *See also Weyant v. Okst,* 198 F.3d 311, 314 (2d Cir.1999). "A judgment is said to be final if it conclusively determines the rights of the parties to the litigation and leaves nothing for the court to do but execute the order or resolve collateral issues." *Weyant,* 198 F.3d at 314 (citations omitted).

On June 11, 2001, the Court denied the plaintiffs' first motion for civil contempt. After modifying the permanent injunction on January 24, 2002, the Clerk of the Court entered final judgment on January 25, 2002. On March 29, 2002, the defendants served and filed their motion to recover attorneys' fees in the amount of $25,000 incurred as a result of defending the plaintiffs' first contempt motion. Because the defendants failed to serve and file their motion for attorneys' fees within fourteen days of the final judgment, they are time-barred under Rule 54.

Even assuming that the defendants timely moved for attorneys' fees under Rule 54, the defendants fail to specify the judgment and the statute, rule or other grounds which entitles them to attorneys' fees for defending the motion for contempt. *See* Fed.R.Civ.P. 54(d)(2)(B) (stating that "the motion ... must specify the judgment and the statute, rule or other

grounds entitling the moving party to the award....."). Accordingly, the motion for attorneys' fees is denied.

### 2. As to the Costs

Rule 54.1 provides in pertinent part that:

Within thirty (30) days after the entry of final judgment, ... unless this period is extended by the court for good cause shown, any party seeking to recover costs shall file with the clerk a request to tax costs annexing a bill of costs and indicating the date and time of taxation.... Any party failing to file a request to tax costs within this thirty (30) day period will be deemed to have waived costs.

S.D.N.Y. & E.D.N.Y. Loc. Civ. R. 54.1(a). In this case, the Clerk of the Court entered final judgment on January 25, 2002. On March 29, 2002, the defendants filed a motion to recover unspecified costs arising out of their defense of the first motion for contempt. Because the defendants failed to comply with the thirty day time limitation and they show no good cause for this failure, the defendants have waived their right to costs. Accordingly, the motion for costs is denied.

## III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the parties are to appear forthwith before United States Magistrate Judge Arlene R. Lindsay for the purpose of scheduling a hearing on the issue of whether the defendants violated the preliminary injunction of April 4, 2002 with Judge Lindsay to prepare a report and recommendation after the hearing pursuant to 28 U.S.C. § 636(b)(1)(B); and it is further

**ORDERED,** that the January 24, 1998 Judgment is amended in accordance with this decision; and it is further

ORDERED, that the defendants' motion to recover attorneys' fees and costs incurred in the first contempt motion is **DENIED**.

**SO ORDERED.**