INDEPENDENT LIVING AIDS, INC.,
and Marvin Sandler, Plaintiffs,

v.

MAXI–AIDS, INC., Harold Zaretsky,
Mitchell Zaretsky, Elliot Zaretsky and
Pamela Zaretsky–Stein, Defendants.

**No. 95 CV 656(ADS).**

United States District Court,
E.D. New York.

Feb. 21, 2004.

The Dweck Law Firm, LLP, by Jack S. Dweck, Esq. and Richard A. Hubell, Esq., of Counsel, New York, NY, Attorney for the Plaintiffs.

Michael D. Solomon, Esq., Levittown, NY, Attorneys for the Defendants Maxi–Aids, Inc., Harold Zaretsky and Elliot Zaretsky.

Berkman, Henoch, Peterson & Peddy, P.C., by Joseph E. Macy, Esq., of Counsel, Garden City, NY, Attorneys for the Defendant Mitchell Zaretsky.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court is a motion by the plaintiffs Independent Living Aids,

Inc. ("ILA") and Marvin Sandler ("Sandler") (collectively, the "plaintiffs") (1) to amend the Court's July 5, 2002 modification of the amended judgment in order to enjoin the defendants' use of the phrase "independent living aids;" and (2) for counsel fees for their defense of the defendants' appeal of the Court's July 5, 2002 modification of the amended judgment.

## I. BACKGROUND

This case, which was commenced in 1995, arose out of claims by the plaintiffs against Maxi–Aids, Inc. ("Maxi–Aids"), Harold Zaretsky ("H. Zaretsky"), Mitchell Zaretsky ("M. Zaretsky"), Elliot Zaretsky ("E. Zaretsky") and Pamela Zaretsky–Stein ("Zaretsky–Stein") (collectively, the "defendants"). The plaintiffs alleged that the defendants engaged in copyright infringement, common-law trademark infringement, unfair competition, false advertising and deceptive trade practices. Both parties compete in the mail-order business specializing in products for the blind, visually impaired and physically disabled. Familiarity with the underlying facts of this case are assumed, *see Independent Living Aids, Inc. v. Maxi–Aids, Inc.*, 208 F.Supp.2d 387 (E.D.N.Y.2002). However, the facts relevant to the instant motion are detailed below.

On December 8,1997, a jury found, among other things, that the plaintiffs owned a trademark for the phrase "Independent Living Aids." *See Independent Living Aids, Inc. v. Maxi–Aids*, No. 95-656, Verdict Sheet, at 3 (E.D.N.Y. Dec. 8, 1997) (finding that the plaintiffs "proved that, prior to any copying of the terms, the plaintiffs had so used [the term 'Independent Living Aids'] . . . so that it developed a secondary meaning, so as to associate that term with the plaintiff. . . ."). As a result of the jury verdict, the Court granted an injunction permanently enjoining the

defendants from using the plaintiffs' trademarks in connection with the sale of their products.

On July 5, 2002, the Court clarified the previously amended judgment and decreed that ILA was the owner of "a valid common law trademark consisting of inverted triangles with the letters ILA inside of a diamond to the left of said triangles and a valid common law trademark for the phrase 'Independent Living Aids.'" *See Independent Living Aids, Inc.*, 208 F.Supp.2d at 394. The Court further ordered that the defendants are "permanently enjoined from using the aforesaid (1) the ILA logo which consists of the inverted triangles with the letters ILA inside of a diamond to the left of said triangles and (2) the phrase "Independent Living Aids" in connection with the sale, offering for sale, distribution, advertising or promotion of any of their products. . . ." *Id.*

The defendants appealed from the July 5, 2002 second amended judgment, arguing that the 1997 jury verdict did not support such an injunction. On appeal, Maxi–Aids also claimed that the phrase "Independent Living Aids" is "generic" and as such it could not be protected.

The Second Circuit affirmed the July 5, 2002 modification of the amended judgment. In particular, the Second Circuit found the amended judgment "more accurately reflect[s] the jury's verdict" because, among other things, "the special verdict form specifically required the jury to make a finding—which the jury did so in the affirmative—as to whether the suggestive term 'Independent Living Aids' by itself had acquired secondary meaning associated with the ILA, thereby conferring upon ILA a trademark in the term." *Independent Living Aids, Inc. v. Maxi–Aids, Inc.*, 69 Fed. Appx. 4, 7 (2d Cir.2003).

With respect to Maxi–Aids' argument that the phrase "Independent Living Aids"

could not have trademark protection because it is generic, the Second Circuit stated that such an argument was "waived by Maxi–Aids when it expressly stipulated to the phrase's descriptiveness." *Id.* at 7 n. 1. With regard to the phrase "independent living aids," in all lower case letters, the Second Circuit indicated that because this Court's use of the term "Independent Living Aids" in its modification order and previous judgments was "purposefully case sensitive, Maxi–Aids is . . . enjoined from using the term 'Independent Living Aids' but not the term 'independent living aids.'" *Id.* However, the Second Circuit advised that "because the capitalization issue was not raised before the District Court, the ILA remains free under Fed. R.Civ.P. 60(b) to seek further modification of the Amended Judgment of Permanent Injunction so as to ensure that ILA's trademark additionally applies to the lower-cased term 'independent living aids,' if indeed it is so applicable." *Id.*

Presently before the Court is a motion by ILA (1) to amend the Court's June 5, 2002 judgment so as to "include within the permanent injunction in favor of the Plaintiff Independent Living Aids, the prohibition against the Defendants from the use in any shape, form or manner, the words 'independent living aids' in lower case letters, in the business of the defendants or in the sale or advertising or marketing of their merchandise by the Defendants," Notice of Mot. ¶ (a); and (2) for counsel fees for the plaintiffs' defense of the appeal by the defendants.

## II.  DISCUSSION

### A.  As to the Modification the Permanent Injunction

■ It is well-settled that "a district court has the power, in the exercise of its discretion, to modify its past injunctive decrees in order to accommodate changed circumstances." *Davis v. N.Y.C. Hous. Auth.,* 278 F.3d 64, 88 (2d Cir.2002) (citing Fed.R.Civ.P. 60(b)(5)); *New York State Ass'n of Retarded Children, Inc. v. Carey,* 706 F.2d 956, 967 (2d Cir.1983) ("The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible."). Fed.R.Civ.P. 60(b)(5) and (6) state:

On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding . . . (5)[if] it is no longer equitable that the judgment should have prospective application; or (6)[for] any other reason justifying relief.

Fed.R.Civ.P. 60(b).

Thus, if changed circumstances may so warrant, "[a] continuing decree of injunction directed to events to come is subject always to adaptation." *New York State Ass'n of Retarded Children, Inc.,* 706 F.2d at 967 (internal quotation marks and citations omitted); *see also United States v. United Shoe Machinery Corp.,* 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562 (1968) (stating that a district court has the power to modify an injunction in order to achieve the purposes of the original injunction where specific facts and circumstances show that those purposes have not been achieved); *Independent Living Aids, Inc. v. Maxi–Aids, Inc.,* 208 F.Supp.2d 387, 394–395 (E.D.N.Y.2002) (modifying a judgment for permanent injunctive relief which failed to prevent defendant's trademark infringement as intended).

■ Here, ILA requests that the Court modify its June 5, 2002 amended judgment to prohibit Maxi–Aids' use of the phrase "independent living aids" in lower case. ILA is concerned that so long as Maxi–Aids' use of the phrase "independent living aids" is not enjoined, Maxi–Aid will continue to "flood the internet and all other

media [including the radio] with this phrase, using lower case lettering." Sandler Aff. ¶ 12.

In response, Maxi–Aids contends that its use of the phrase "independent living aids" is permitted because there is a distinct difference between "Independent Living Aids," for which the plaintiff has trademark protection, and the phrase "independent living aids," with a lowercase "i," "l" and "a." Maxi–Aids also argues that the lower case version of this phrase may not be enjoined because it is "generic," and thus cannot be afforded trademark protection. *See Courtenay Communications Corp. v. Hall,* 334 F.3d 210, 214 n. 2 (2d Cir.2003) (A generic mark cannot be registered as a trademark).

It is undisputed that ILA holds a valid trademark for the phrase "Independent Living Aids." Not only was ILA's rights to this trademark expressly determined by the jury verdict, but it was expressly specified in the Court's June 5, 2002 amended judgment which was affirmed by the Second Circuit. *See Independent Living Aids,* 69 Fed. Appx. at 7. Furthermore, Maxi–Aids does not dispute that ILA has a trademark in the phrase "Independent Living Aids." *See* Solomon Aff. In Opp. ¶ 10 ("Therefore, according to the very rules of our language, "ILA" and "Independent Living Aids" can be trademarked and, when capitalized, clearly only refer to the Plaintiffs"). Thus, contrary to Maxi–Aids' assertion, because it has already been established that ILA holds a valid trademark for, among other things, the phrase "Independent Living Aids," the issue is not whether the phrase "independent living aids" is generic, but rather whether this lower case phrase infringes on ILA's previously established valid trademark. *See Brookfield Communications, Inc., v. West Coast Entertainment,* 174 F.3d 1036, 1055 (9th Cir.1999) (The

Lanham Act requires that the allegedly infringing mark be compared with the claimants *trademark* ) (emphasis in original) (citing 15 U.S.C. §§ 1114(1), 1125(a)).

Of great importance to the Court's analysis, is the parties' heavy reliance on the World Wide Web and internet for marketing, sales, and advertising. Such is the case because, "in the internet context, in particular, entering a web site takes little effort—usually one click from a linked site or a search engine's list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership." *See Brookfield Communications, Inc.,* 174 F.3d at 1055. Significantly, internet search engines are not case sensitive, and an internet search for "independent living aids" yields the same result as a search for "Independent Living Aids." *See Id.* (differences in capitalization between a trademark and an internet domain name are "inconsequential in light of the fact that Web addresses are not cap-sensitive. . . ."). *See Keebler v. Rovira Biscuit Corp.,* 624 F.2d 366, 372 n. 3 (1st Cir.1980) ("The purpose of the [Lanham] Act was to protect the public from confusing and deceptive trademarks and to provide security against misappropriation for trademark owners who have invested resources in presenting their product to the public and exploiting whatever goodwill the merits of their products warrant.").

As in this case where the parties offer the same products and services and use of the internet as a marketing and advertising tool, many forms of customer confusion are likely to result. *See Brookfield,* 174 F.3d at 1057; *see also Standard & Poor's Corp. v. Commodity Exchange,* 683 F.2d 704, 709 (2d Cir.1982) (The proximity of the products in the market is also important because confusion is more likely

where the respective companies operate in the same market.). Thus, enjoining Maxi–Aids' use of "Independent Living Aids" but not "independent living aids" would be not "achieve the purposes of the original injunction." *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562 (1968).

Maxi–Aids cites two cases in support of their proposition that "independent living aids" is not protectable. However, Maxi–Aids' reliance on these cases is misplaced.

First, Maxi–Aids relies on *Otokoyama Co., Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir.1999) for the proposition that "there is a distinction between initial capitalization and lower case designation of a product." Defs. Mem. In Opp. p. 2. However, Maxi–Aids' contention that under *Otokoyama* the lower case phrase "independent living aids" cannot be afforded trademark protection is incorrect.

In *Otokoyama*, a Japanese sake brewer who imported its sake under the name "Otokoyama," brought a trademark infringement action against its competitor, which sold sake under the designation "Mutsu Otokoyama." In appealing the district court's grant of a preliminary injunction, the defendant contended that the plaintiffs are not entitled to trademark protection for the word "otokoyama" because it is the Japanese word for a type of sake. The Second Circuit, among other things, opined that should the word "otokoyama" be found to be generic on remand, no one person could have the right to designate their product as "Otokoyama" with a capital "O" because "competing merchants would be prevented from calling their product by the word which designates that product...." *Id.* at 272. Accordingly, the Second Circuit vacated the preliminary injunction in the plaintiff's favor and remanded the case for a trial on whether the word "otokoyama" is generic. *Id.* at 273.

Here, unlike the plaintiff in *Otokoyama*, it is already established that ILA's trademark in "Independent Living Aids" is valid, and therefore, not generic. Therefore, the *Otokoyama* Court's conclusion that a generic phrase cannot be protected is inapplicable to the case at bar.

Second, Maxi–Aids relies on *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 146 (2d Cir.1997) for proposition that "descriptive words in one circumstance may be, out of necessity generic in another." Defs. Mem. In Opp. p. 3. In *Genesee*, both parties were in the beer brewing industry. The plaintiff, who used the phrase "Honey Brown" on its lager product sued to prohibit the defendant from marketing its ale as "Honey Brown." *See Genesee*, 124 F.3d at 140. The Second Circuit found that because lagers and ales are two distinct categories of beer, the phrase "Honey Brown" is generic as applied to ales because those words are necessary to describe a beer that is brewed with the addition of honey but may not be generic when applied to lagers. That case is also distinguishable from the case at bar because unlike the parties in *Genesee* who are marketing two different types of beer, the parties in this action compete in the same category, namely, products for disabled people. Therefore, the Court is not persuaded by Maxi–Aid's reliance on *Genesee*.

Accordingly, ILA's motion to amend the June 5, 2002 amended judgment so as to permanently enjoin Maxi–Aids' use of the phrase "independent living aids" is granted.

## B. As to the Recovery of Counsel Fees for the Defense of the Defendants' Appeal

█ Under the Lanham Act, "[t]he court in exceptional cases may award rea-

sonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A case is exceptional if the conduct of the non-moving party is "groundless, unreasonable, vexatious or pursued in bad faith." *Taj Mahal Enterprises, Ltd. v. Trump,* 745 F.Supp. 240, 253 (D.N.J.1990) (quoting *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 123 (8th Cir.1987)). "An award of attorney[s'] fees may be justified when bad faith infringement has been shown." *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749, 753 (2d Cir.1996); *Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 854 (2d Cir.1995) (" 'Exceptional' circumstances include willful infringement.") However, a showing of bad faith is not a prerequisite for an award of attorneys' fees. *Noxell Corp. v. Firehouse No. 1 B–B–Que Restaurant,* 771 F.2d 521, 526 (C.A.D.C.1985).

■ The plaintiffs contend that they are entitled to counsel fees for their defense of the defendants' appeal from the Court's June 5, 2002 judgment. The plaintiffs state in a conclusory fashion that because Second Circuit issued a "full and unqualified affirmance of the District Court," the appeal could not have been taken in good faith. Plfs. Mem. In Support p. 15. The plaintiffs further maintain that this appeal is an extension the defendants' conduct which the jury found to be willful and deliberate.

The court should consider all of the facts and circumstances in determining whether a case is exceptional, *Pebble Beach Co. v. Tour 18 I Ltd.,* 155 F.3d 526, 555 (5th Cir.1998). In this regard, the Court notes that the defendants have already paid the attorneys' fees imposed as a result of the December 8, 1997 jury verdict. At this time, the Court's analysis with respect to attorneys' fees is restricted to the defendants' appeal of the Court's modification of the amended judgment. Thus, unless the Court finds that the defendants' appeal was "groundless, unreasonable, vexatious or pursued in bad faith," *see Taj Mahal Enterprises, Ltd.,* 745 F.Supp. at 253, the Court will not award attorneys' fees. In the Court's view, the defendants' appeal was not groundless or unreasonable. Although the Second Circuit affirmed the Court's June 5, 2002 modification of the amended judgment, the Second Circuit also indicated that under the current wording of the Court's judgment, Maxi–Aids is not enjoined from using the term "independent living aids." Thus, Maxi–Aids' appeal was at least partially successful.

Accordingly, the plaintiffs' request for attorneys fees pursuant to 15 U.S.C. § 1117(a) is denied.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the plaintiffs' motion to amend the judgment is **GRANTED;** and it is further

**ORDERED,** that the permanent injunction is modified to include, the prohibition against the Defendants from the use in any shape, form or manner, the words "independent living aids" in lower case letters, and "INDEPENDENT LIVING AIDS" in the business of the defendants or in the sale or advertising or marketing of their merchandise by the defendants; and it is further

**ORDERED,** that the motion for attorneys' fees incurred in the plaintiffs' defense of the defendants' appeal is **DENIED.**

**SO ORDERED.**