**PARAMEDICS ELECTROMEDICINA COMERCIAL, LTDA., Plaintiff–Counter–Defendant–Appellant,**

v.

**GE MEDICAL SYSTEMS INFORMATION TECHNOLOGIES, INC., Defendant–Counter–Claimant–Appellee.**

No. 03–7672, 03–7896.

United States Court of Appeals,
Second Circuit.

Argued: March 30, 2004.

Decided: May 25, 2004.

William G. O'Donnell, Jr., O'Donnell & Fox, P.C., New York, NY, for Appellant.

José Astigarraga, Astigarraga Davis, Miami, FL (Edward M. Mullins and Scott A. Burr, on the brief), for Appellee.

Before: McLAUGHLIN and JACOBS, Circuit Judges, and COVELLO, District Judge.[1]

JACOBS, Circuit Judge.

Paramedics Electromedicina Comercial, Ltda. (known as "Tecnimed") was a distributor in Brazil for products of GE Medi-

1. The Honorable Alfred Covello, United States District Judge for the District of Connecticut, sitting by designation.

cal Systems Information Technologies, Inc. ("GEMS–IT"), under agreements containing broad arbitration clauses. GEMS–IT invoked the arbitration process in April 2002; Tecnimed soon thereafter commenced a lawsuit in Porto Alegre, Brazil (the "Porto Alegre action") against GEMS–IT and a related company, General Electric do Brasil ("GE Brasil"), and petitioned in New York State court for a permanent stay of the arbitration. GEMS–IT removed the petition to federal court, and counterclaimed for an order to compel arbitration and for an anti-suit injunction to halt the Porto Alegre action.

On June 4, 2003, the district court (Eaton, *M.J.*) issued an order compelling arbitration and directing Tecnimed to "immediately take all steps necessary to cause dismissal of the" Porto Alegre suit. Instead, according to Tecnimed, it requested the Brazilian court to put the case on a "suspense" calendar. Not satisfied, the district court directed Tecnimed to sign a Joint Petition to Dismiss by a certain date, which Tecnimed failed to do. The court imposed a sanction of $1,000 for each day of continued noncompliance, and ordered Tecnimed's president, Paulo Werlang, to appear in person at the next scheduled court hearing. Werlang did not appear. The district court held Tecnimed and Werlang in civil contempt, and ordered Tecnimed and Werlang, jointly and severally, to pay GEMS–IT $1,000 until September 3, 2003, and $5,000 thereafter for each day of continued intransigence.

Tecnimed argues that the district court erred in enjoining the Porto Alegre action and in holding Tecnimed and Werlang in civil contempt. We conclude (i) that the anti-suit injunction was an appropriate measure to enforce and protect the judgment compelling arbitration; (ii) that the district court did not abuse its discretion in holding Tecnimed and Werlang in civil

contempt; (iii) that we must dismiss Werlang's individual appeal because the notice of appeal—which makes scant reference to Werlang—does not make his intent to appeal objectively clear; but (iv) that because the contempt sanction was imposed in part as compensation, it must be remanded for reconsideration of the amount in light of its purpose and GEMS–IT's demonstrated loss.

## BACKGROUND

GEMS–IT is a Wisconsin corporation that manufactures and distributes medical equipment. Tecnimed is a Brazilian corporation that markets and sells medical equipment, and has distributed GEMS–IT's products (and those of its predecessor companies) in Brazil since 1995.

In 1999, Tecnimed and GEMS–IT executed two agreements to govern their relationship, a Sales and Service Agreement and a Distribution Agreement (collectively, "the Agreements"). Unlike prior contracts between Tecnimed and predecessors of GEMS–IT, the 1999 Agreements did not grant Tecnimed exclusive distribution rights. Each Agreement contained an arbitration clause. The Sales and Service Agreement provided, in relevant part, that thirty days following notice given by one party to the other of "any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement which the Parties are unable to resolve by mutual negotiation" or mediation, "either Party shall be entitled to have such controversy, claim or dispute finally settled by arbitration, in accordance with the [then-effective] rules of the Inter–American Commercial Arbitration Commission" ("IACAC"). The Distribution Agreement contained a clause to the same effect.

By early 2001, controversies had arisen: according to GEMS–IT, Tecnimed owed

approximately $1.2 million on unpaid invoices; according to Tecnimed, GEMS–IT sold products directly into the Brazilian market, bypassing Tecnimed in violation of certain licenses. On March 18, 2002, after fruitless negotiations, GEMS–IT wrote to Tecnimed initiating the arbitration process outlined in the Agreements. Ten days later, Tecnimed advised GEMS–IT that it had commenced legal action in the Tenth Civil Circuit Court of Porto Alegre, Brazil.

On April 22, 2002, GEMS–IT filed a notice and request for arbitration with the IACAC. After further fruitless negotiations, Tecnimed advised the IACAC that the Commission lacked jurisdiction to consider GEMS–IT's claims, and that Tecnimed would not be participating in the arbitration. The IACAC nonetheless appointed a panel, consisting of one arbitrator from Brazil, one from the United States, and one from Canada.

On May 23, 2002, Tecnimed filed its complaint with the Porto Alegre court, naming as defendants GEMS–IT and GE Brasil, and alleging, inter alia: (i) that the Agreements lacked "contractual equilibrium" and were unenforceable under Brazilian law; (ii) that Tecnimed was not required to arbitrate its dispute with GEMS–IT because the Agreements had expired; (iii) that GEMS–IT wrongfully terminated the Agreements, causing a loss of profits to Tecnimed; (iv) that GEMS–IT illegally imported three pieces of equipment into Brazil without Tecnimed's authorization, causing Tecnimed to suffer "moral" damages; (v) that GEMS–IT breached the Agreements by failing to pay Tecnimed sales commissions for certain products; (vi) that Tecnimed was entitled to exclusive distributorship of GEMS–IT products in Brazil; and (vii) that Tecnimed was entitled to a declaration of non-existence of debt to GEMS–IT for equipment purchased by Tecnimed under the Agreements.

GEMS–IT moved on both fronts; it answered the Porto Alegre complaint, and filed a statement of claim with the IACAC arbitral panel. In response, Tecnimed filed a petition in New York State court seeking a permanent stay of the arbitration (the "New York action"). GEMS–IT removed the petition to the United States District Court for the Southern District of New York, and asserted counterclaims for an order compelling arbitration and for an anti-suit injunction to bar Tecnimed from prosecuting the Porto Alegre action.

In April 2003 (while Tecnimed's petition for a stay of arbitration was pending in the district court), the IACAC panel rejected Tecnimed's challenge to arbitral jurisdiction, ruling that the arbitration clauses were valid and binding; that the claims GEMS–IT had submitted to the panel were within the scope of the arbitration clauses, as were the claims Tecnimed was asserting in Porto Alegre; and that the panel would consider the issues in the Porto Alegre action to the extent deemed necessary.

On June 4, 2003, the district court (Eaton, M.J.) ruled that the arbitration clauses were valid and that all of GEMS–IT's claims, as well as all of Tecnimed's claims asserted in the Porto Alegre action, were arbitrable. The court thereupon granted GEMS–IT's motion to compel arbitration, rejected Tecnimed's request for a stay, entered an anti-suit injunction, and ordered Tecnimed to "immediately take all steps necessary to cause dismissal of the [Porto Alegre] Action." If the suit in Porto Alegre was not dismissed by June 17, 2003, Tecnimed had until June 20, 2003 to explain why.

On June 17, 2003, Tecnimed filed a notice with the Porto Alegre court requesting that its case be placed on the "suspense"

calendar. According to GEMS–IT's expert on Brazilian law, placement on the suspense calendar would halt the case for no more than six months. In any event, the Porto Alegre court notified GEMS–IT on June 30, 2003 that it was required to file a "manifestation" (the Brazilian equivalent of a sur-reply) to Tecnimed's reply to GEMS–IT's answer to the complaint.

Apprised of these developments, the district court directed GEMS–IT to draft a Joint Petition to Dismiss (the "Petition") pursuant to Brazilian law by July 1, 2003, and ordered Tecnimed either to sign it by July 8, 2003, or to register objections to the draft by that date. Tecnimed's counsel refused to sign the Petition on the grounds that it did not protect Tecnimed from the running of the applicable statute of limitations and that, under Brazilian law, Tecnimed would have to pay a large "honorarium" fee of 10–20% of the value of the claim as a consequence of dismissing the case.[2]

On July 14, 2003, GEMS–IT filed a motion to hold Tecnimed and its president, Paulo Werlang, in civil contempt for failing to dismiss the Porto Alegre action. GEMS–IT argued: that Tecnimed's notice of suspension to the Porto Alegre court was defective because it failed to furnish a Portuguese translation of the district court's order; that the honorarium fee—based on the stated value of the claim—would be nominal; and that under Brazilian law the statute of limitations would be tolled automatically pending arbitration.

On July 21, 2003, the district court ordered the parties to amend the Petition to provide expressly that the statute of limitations would be tolled pending the arbitration, ordered Tecnimed to sign the modified Petition by July 24, 2003, and warned

that noncompliance would trigger sanctions. Tecnimed did not sign. Instead, it moved for a stay of the injunction pending appeal and for postponement of the scheduled July 31 hearing. The district court denied the postponement, found that Tecnimed had violated its July 21 order to sign the Petition, and ordered Tecnimed to pay GEMS–IT $1,000 for each day of continued noncompliance. The court also ordered Paulo Werlang (who resides in Brazil) to appear in person at the July 31 hearing, "to show cause why Tecnimed should not be subjected to further sanctions." The court indicated in a subsequent order that it would consider holding both Tecnimed and Werlang in civil and criminal contempt.

At the July 31 hearing, Werlang failed to appear as ordered. The district court found that Tecnimed and Werlang were in civil contempt for willfully violating its orders, but declined to issue a finding of criminal contempt. The court ordered Tecnimed and Werlang, jointly and severally, to pay GEMS–IT $1,000 per day until September 3, 2003, and $5,000 per day thereafter, until Tecnimed complied fully with the court's orders.

This Court consolidated Tecnimed's separate appeals of the district court's grant of an anti-suit injunction and its contempt ruling.

## DISCUSSION

### I

■ The standard of review for the grant of a permanent injunction, including an anti-suit injunction, is abuse of discretion. *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 237 (2d Cir.2001); *see*

---

**2.** Tecnimed alleges that the claim was valued at $3.64 million, which is the amount it requested in damages. However, when the complaint was filed, Tecnimed actually "valued" the claim at approximately $122.

*also China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 37 (2d Cir. 1987).

■ It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum. *China Trade,* 837 F.2d at 35. But principles of comity counsel that injunctions restraining foreign litigation be "used sparingly" and "granted only with care and great restraint." *Id.* at 36 (internal quotation marks and citations omitted); *see also Gen. Elec. Co. v. Deutz Ag,* 270 F.3d 144, 160 (3d Cir.2001).

■ An anti-suit injunction against parallel litigation may be imposed only if: (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined. *China Trade,* 837 F.2d at 35. Once past this threshold, courts are directed to consider a number of additional factors, including whether the foreign action threatens the jurisdiction or the strong public policies of the enjoining forum. *Id.* at 36. Tecnimed contends that neither threshold requirement has been satisfied, and that comity considerations render the injunction inappropriate.

### A.

■ Tecnimed asserts that the parties in the two matters are not identical because GE Brasil, which Tecnimed named as a defendant in the Porto Alegre action, is not a party in the New York action. The record supports the district court's finding of substantial similarity and affiliation between GEMS–IT and GE Brasil.

Tecnimed's claims against GE Brasil arise out of the same facts, circumstances, and relationships as alleged in the dispute between Tecnimed and GEMS–IT. That is neither here nor there, except that Tecnimed's complaint in the Porto Alegre action specifically states that GE Brasil is an appropriate party because "more than 70% of its shares are held by [GEMS–IT], which makes it an active participant in the business relationships arising from [the Agreements]." The claims against GE Brasil thus rest chiefly (if not completely) on its affiliation with GEMS–IT. Tecnimed cites a statement by a GE Brasil official that GE Brasil is not an affiliate of GEMS–IT. By the same token, however, one Tecnimed director referred in testimony to "GE and its affiliate General Electric do Brasil." None of this matters much, however, because the word "affiliate" can be a term of art, and may have a particular meaning under the law of Brazil as it does in American law.

The decisive point on this record is that GE Brasil is named in the Porto Alegre action chiefly on the basis of its aspects of identity with GEMS–IT. It is undisputed that GEMS–IT and GE Brasil are part of the General Electric group of companies. Tecnimed served process on GEMS–IT in the Porto Alegre action at GE Brasil's address. Tecnimed explains that such service was valid because "although [GE Brail] is not an affiliate of [GEMS–IT], it can be considered as such" because GEMS–IT holds at least 70% of GE Brasil's capital. The district court did not abuse its discretion in ruling that the parties to the two actions are thus sufficiently similar to satisfy the first threshold requirement of *China Trade. See Motorola Credit Corp. v. Uzan,* 2003 WL 56998 (S.D.N.Y. Jan. 7, 2003), 2003 U.S. Dist. LEXIS 111, at *6 (finding sufficient similarity between parties, even though not all parties to the two actions were identical, because "the real parties in interest are the same in both matters"); *MasterCard Int'l, Inc. v. Argencard Sociedad Anonima,* 2002 WL 432379 (S.D.N.Y. Mar. 20, 2002), 2002 U.S. Dist. LEXIS 4625, at *31

(finding sufficient similarity between parties despite intervention in foreign action by one party's controlling shareholder, which was "not a necessary party to that action").

## B.

Under *China Trade*, an anti-suit injunction may be proper if "resolution of the case before the enjoining court would be dispositive of the enjoined action." 837 F.2d at 36. The case before the enjoining court here concerns the arbitrability of the parties' claims; therefore the question under *China Trade* is whether the ruling on arbitrability is dispositive of the Porto Alegre litigation, even though the underlying disputes are confided to the arbitral panel and will not be decided by the enjoining court.[3] In short, the district court's judgment disposes of the Porto Alegre action because the Porto Alegre litigation concerns issues that, by virtue of the district court's judgment, are reserved to arbitration.

■ Tecnimed argues that its Brazilian claim for "moral damages" stemming from GEMS–IT's alleged violation of Brazil's import and licensing laws is a tort claim unique to Brazilian law that cannot be resolved through arbitration because "an arbitration in the United States will result in a misunderstanding of Brazilian import and registration law by the IACAC arbitrators." Perhaps this is true, though the panel assigned by the IACAC includes one arbitrator from Brazil; however, to the extent that the claim is arbitrable, the district court's ruling is dispositive even if the claim is unique to Brazil.

■ As to arbitrability, Tecnimed argues that this claim is not "based upon the sale of GEMS–IT's products by Tecnimed pursuant to the terms of the ... Agreements," i.e., that it falls outside the purview of the arbitration clauses.[4] We review *de novo* a district court's determination that a claim is arbitrable. *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003).

■ Federal policy strongly favors the enforcement of arbitration agreements. *See* 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Therefore, "the existence of any broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.*, 198 F.3d 88, 99 (2d

---

**3.** Compare the cases in which the domestic court speaks to the merits of a controversy under domestic law while an analogous claim under foreign law is pending in a foreign forum, and in which resolution of one action may not dispose of the other. *See Sperry Rand Corp. v. Sunbeam Corp.*, 285 F.2d 542, 545 (7th Cir.1960) (disposition of trademark action in Illinois would not necessarily resolve subsequently trademark suit filed in Germany under German law by plaintiff's German licensee, which "involv[ed] specific foreign rights arising under and enforceable only through the laws of" Germany); *Rauland Borg Corp. v. TCS Mgmt. Group, Inc.*, 1995 WL 31569 (N.D.Ill. Jan. 25, 1995), 1995

U.S. Dist. LEXIS 893, at *9–*12 (American trademark action implicated a different set of laws—and raised a potentially unique set of defenses—from a Canadian trademark action involving the same parties and issues).

**4.** Tecnimed's claims on appeal are limited to the district court's grant of an anti-suit injunction and its contempt finding; there is no clear appeal of the district court's determination that all the claims are arbitrable. However, certain language in Tecnimed's brief can nonetheless be liberally construed to raise this argument, and we will therefore consider it.

Cir.1999) (quoting *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 74 (2d Cir.1997)); *see also Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.,* 189 F.3d 289, 294 (2d Cir.1999). The arbitration agreement here, covering as it does "any controversy, claim or dispute" arising out of the Agreements, is of the broad type. "If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated." *Smith/Enron,* 198 F.3d at 99 (citation omitted).

Tecnimed's claim for moral damages alleges that GEMS–IT circumvented Tecnimed as the distribution agent for certain products that were imported into Brazil. This claim "touches matters" covered by the Agreements, which govern the relationship between the companies regarding the distribution, sale, and service of GEMS–IT's products in Brazil. Certainly, the arbitration agreements here are "susceptible of an interpretation that covers the asserted dispute." *Id.* The district court committed no error in ruling that the claim for moral damages is arbitrable, and that such ruling is dispositive of the claim.

### C.

■ Beyond the threshold criteria of *China Trade,* other considerations include whether the foreign proceeding threatens a strong public policy or the jurisdiction of the domestic forum. *See China Trade,* 837 F.2d at 36–37. Both considerations are salient in this case.

■ As the D.C. Circuit has noted, "an anti-suit injunction will issue to preclude participation in the litigation only when the strongest equitable factors favor its use," and the granting of an injunction depends in part on the "importance to the forum of the law allegedly evaded." *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 931–32 (D.C.Cir.1984); *see*

*also Gau Shan Co. v. Bankers Trust Co.,* 956 F.2d 1349, 1358 (6th Cir.1992) ("only the evasion of the most compelling public policies of the forum will support the issuance of an antisuit injunction").

■ The federal policy favoring the liberal enforcement of arbitration clauses (as discussed above) applies with particular force in international disputes. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 638–40, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Smith/Enron,* 198 F.3d at 92. The Porto Alegre action, filed 31 days after GEMS–IT filed a notice and request for arbitration with the IACAC, was a tactic to evade arbitration. As Mr. Werlang, Tecnimed's president, stated in his affidavit, Tecnimed initiated the Porto Alegre action "to avoid being dragged into an arbitration process that GE had no right to force upon it."

■ We need not decide categorically whether an attempt to sidestep arbitration is alone sufficient to support a foreign antisuit injunction, because "[t]here is less justification for permitting a second action," as here, "after a prior court has reached a judgment on the same issues." *Laker Airways,* 731 F.2d at 928 n. 53. An anti-suit injunction may be needed to protect the court's jurisdiction once a judgment has been rendered. The doctrine of res judicata, where applied, may obviate injunctive relief against re-litigation in a second forum; but a foreign court might not give res judicata effect to a United States judgment, particularly since United States courts "may choose to give res judicata effect to foreign judgments on the basis of comity," but "are not obliged" to do so. *Mezitis Diorinou v. Mezitis,* 237 F.3d 133, 140 (2d Cir.2001) (internal quotation marks and citation omitted).

Principles of comity weigh heavily in the decision to impose a foreign anti-suit in-

junction; while such an injunction in terms is leveled against the party bringing the suit, it nonetheless "effectively restricts the jurisdiction of the court of a foreign sovereign." *China Trade,* 837 F.2d at 35. So courts that contemplate this extreme measure often must reconcile the protection of their own jurisdiction with respect for the foreign forum. But where one court has already reached a judgment—on the same issues, involving the same parties—considerations of comity have diminished force.

## II

■ This Court reviews the district court's finding of contempt for abuse of discretion. *See Perez v. Danbury Hosp.,* 347 F.3d 419, 423 (2d Cir.2003). However, "review of a contempt order is more exacting than under the ordinary abuse-of-discretion standard because a district court's contempt power is narrowly circumscribed." *Id.*

Tecnimed argues that the district court erred in (A) holding Tecnimed in civil contempt; (B) holding Tecnimed's president in civil contempt; (C) threatening criminal contempt sanctions against Tecnimed and Werlang; and (D) calculating the contempt award.

## A.

■ A party may be held in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous,

(2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir.1995). It need not be established that the violation was willful. *Donovan v. Sovereign Sec. Ltd.,* 726 F.2d 55, 59 (2d Cir.1984).

■ The injunction clearly directed Tecnimed to "immediately take all steps necessary to cause dismissal of the [Porto Alegre] Action." The July 21 order set forth specific steps that Tecnimed was required to take: sign the Joint Petition to Dismiss, and file an affidavit of compliance.

Tecnimed argues that there was no clear and convincing evidence of its noncompliance because the district court "seemed unwilling to even consider" whether suspension of the Porto Alegre action, rather than an outright dismissal, was a proper method of compliance. Even on its own terms, this argument is unavailing. The district court found insufficient proof that Tecnimed actually caused the Porto Alegre action to be placed on the suspense calendar. GEMS–IT's expert on Brazilian law attested that the Porto Alegre action had not yet been suspended.[5] In any event, the supposed suspension of the case did not stop the proceedings: after the suspense notice had been entered, the Porto Alegre court required GEMS–IT to file a "manifestation," which (GEMS–IT's expert testified) was part of the normal litigation process. Having thus failed to comply with the injunction, Tecnimed refused to heed the district court's July 21 directive

---

**5.** According to the Porto Alegre court documents, as of August 3, 2003, the completion of the suspension action was pending receipt of a manifestation from Tecnimed (concerning certain documents). Tecnimed's attorney stated at the July 31 contempt hearing that although the notice for suspension had been filed, it had not yet been approved by the Brazilian judge; the delay in approval was unexplained. Finally, GEMS–IT contends that Tecnimed failed to follow proper procedure in filing for a suspension in the Porto Alegre court; specifically, it is alleged that Tecnimed attached an English-language copy of the injunction order without the Portuguese translation that is required by Brazilian law.

to sign the Joint Petition to Dismiss, and instead sought a stay pending appeal and a postponement of the hearing at which Mr. Werlang was directed to appear in the event of noncompliance. The clear and convincing proof is that Tecnimed did not comply. Tecnimed's defense is that the court should have been satisfied with steps that were short of compliance and that were not efficacious.

Even if Tecnimed disagreed with the district court's imposition of these orders, "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union,* 445 U.S. 375, 386, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980). It is a matter "of respect for the judicial process." *Id.* at 387, 100 S.Ct. 1194.

Tecnimed has not demonstrated a diligent attempt to comply with the district court's orders in a reasonable manner. Tecnimed's explanations as to why the case had to be suspended, rather than dismissed, are specious.

First, Tecnimed claims that voluntary dismissal would under Brazilian procedure entail a prohibitively expensive honorarium payment of 10–20% of the value of the claim. However, though Tecnimed sought $3.64 million in damages, the complaint valued the case at (a negligible) $122.

Second, Tecnimed cites its risks under the Brazilian statute of limitations. But GEMS–IT's expert on Brazilian law attested that the statute of limitations in the Porto Alegre action would automatically toll upon Tecnimed's filing of its claims with the arbitration panel. In any event, the Joint Petition to Dismiss contained any necessary assurance: "[t]he dismissal of this lawsuit does not bar the refiling of a dismissed claim that the IACAC Arbitral

Tribunal determines is not properly subject to arbitration." Tecnimed objected to that wording on the ground that only the presiding judge in Porto Alegre can extend the limitations period, but Tecnimed provides no support for this assertion. Further, Judge Eaton stated on the record that the Petition was to be presented to the Brazilian judge, and that "[i]f the judge refuses to toll or enlarge, then Tecnimed may be able to argue that it has complied with my orders."

Finally, a case may be suspended under Brazilian law for no more than six months, so that any suspension could expire long before a final ruling by the arbitration panel. Suspension of the Porto Alegre action thus provided inadequate relief for GEMS–IT. Because Tecnimed did not diligently attempt to comply with the district court's orders in a reasonable manner, *see Perez,* 347 F.3d at 423–24, the court's finding of contempt was not an abuse of discretion.

### B.

Tecnimed argues that even if the finding of civil contempt against the company was permissible, there was no basis for imposing individual sanctions against the company's president, Paulo Werlang.

A notice of appeal must "specify the party or the parties taking the appeal by naming each one in the caption or body of the notice." Fed. R.App. P. 3(c)(1)(A). However, "[a]n appeal must not be dismissed for ... failure to name a party whose intent to appeal is otherwise clear from the notice." *Id.* R. 3(c)(4).

The notice of appeal does not name Werlang as a party in the caption. The notice recites that "plaintiff Paramedics Electromedicina Comercial Ltda. hereby appeals [the district court's ruling],"

without reference to Mr. Werlang. The body of the notice mentions him, once, but only to recite the procedural fact that the district court's order "granted the motion by [GEMS–IT] to hold [Tecnimed] and its President Paulo Werlang in contempt, jointly and severally, pursuant to 28 U.S.C. § 636(e)." Thus the notice of appeal does not make "objectively clear" Werlang's intent to appeal. *See Agee v. Paramount Communications, Inc.,* 114 F.3d 395, 399 (2d Cir.1997) (finding that, although notice of appeal identified order imposing joint and several sanctions against both client and attorney, attorney's intent to participate as a party to the appeal not clear from face of the notice). Werlang's individual challenge to the contempt order is therefore dismissed.

### C.

When the district court directed Werlang to appear at the July 31 hearing, it warned that it might impose criminal sanctions. Tecnimed argues that this threat kept Werlang at home, and that Werlang's absence (so induced) ultimately triggered the court's finding of civil contempt. Tecnimed contends that the threat was therefore an abuse of discretion.

A party who violates an injunction entered by the district court faces the threat of both civil and criminal contempt. *See Timken Roller Bearing Co. v. United States,* 341 U.S. 593, 604, 71 S.Ct. 971, 95 L.Ed. 1199 (1951) (Reed, *J.,* concurring); *Universal City Studios, Inc. v. N.Y. Broadway Int'l Corp.,* 705 F.2d 94, 96 (2d Cir.1983). Criminal contempt is typically imposed "to punish the violation and vindicate the court's authority." *Universal City Studios,* 705 F.2d at 96.

Tecnimed and Werlang had repeatedly refused to comply with the district court's orders. It was well within the court's discretion to advise the parties of its willingness to exercise all its powers to enforce its mandates. The possibility that the threat of criminal sanctions impacted Werlang's decision to miss the July 31 hearing has no bearing on its propriety in the first place.

### D.

Finally, Tecnimed argues that the fine imposed by the district court was unnecessarily high and that the court did not properly account for Tecnimed's financial resources and ability to pay.

The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged. *See Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,* 885 F.2d 1, 5 (2d Cir.1989); *Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir.1979). Such sanctions may not be imposed as a purely punitive measure. *Manhattan Indus.,* 885 F.2d at 5.

The fine levied by the district court had coercive and compensatory components. Judge Eaton stated in the Final Judgment of Civil Contempt, "I believe that I have chosen sanctions which are fair and reasonable and will probably be effective in bringing about eventual compliance." But he also noted that Tecnimed and Werlang were "unjustifiably causing GEMS–IT to incur large expenses," and directed Tecnimed to pay the entirety of the fine to GEMS–IT, rather than the court. It appears from the Judgment that neither purpose predominated.

To the extent that a contempt sanction is coercive, the court has "broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus. v. Acme Quilting Co.,* 673 F.2d 53, 57 (2d Cir.1982). The district court is coun-

seled to consider several factors in calculating a fine, including "the character and magnitude of the harm threatened by continued contumacy," the "probable effectiveness of any suggested sanction in bringing about [compliance]," and the contemnor's ability to pay. *Id.* (citations omitted).

■ If the fine is compensatory in purpose, the district court has less discretion. Thus where a fine is paid directly to the other party rather than the court, "the sanction should correspond at least to some degree with the amount of damages." *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1062 (2d Cir.1995).

■ "A sanction may," as here, "be both coercive and compensatory. Yet, some proof of loss must be present to justify its compensatory aspects." *N.Y. State NOW v. Terry,* 886 F.2d 1339, 1353 (2d Cir.1989). The coercive component of the fine levied against Tecnimed does not predominate over the compensatory, particularly because the entire amount is payable directly to GEMS–IT. *See id.* (where entire fine is payable directly to other party, must show proof of loss; entire fine cannot be paid directly to other party as means to "enhance the sanction's coercive effect").

The per-day amount may be reasonable, but the court provided no justification beyond a generalized finding that Tecnimed's noncompliance was "unjustifiably causing GEMS–IT to incur large expenses"; there is no clarification as to what those expenses actually entail. To the extent that the sanction is compensatory, the fine should be correlated with the loss incurred by GEMS–IT. *See King,* 65 F.3d at 1062. We therefore remand to the district court to reconsider the amount of the sanction in light of its purpose and GEMS–IT's demonstrated loss. Depending on the court's findings, the court may enter an order adjusting the amount of the sanction.

■ Finally, we conclude that the district court properly considered Tecnimed's financial resources and its ability to pay the fine. A contemnor may be excused from the burden of a civil contempt sanction if it lacks the financial capacity to comply; but the contemnor bears the burden of production in raising such a defense. *See United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983).

■ Tecnimed furnished limited information: that it had experienced a loss in sales of 15–20% of its level in 2001 (before the relationship with GEMS–IT ended), that it had fired 30 employees, and that it had closed all but one of its offices. It offered no documents—balance sheets, tax returns, income statements, or bank records—to show its financial incapacity. Tecnimed ascribes its failure to produce such evidence to the "compressed time period between the filing of the contempt motion and the July 31st hearing." But it is no abuse of discretion to assume that a going concern is able to put its hands on its most basic financial records. "A contemnor's failure to provide financial information upon which the burden of a sanction may be evaluated may not … result in a holding that the district court abused its discretion in imposing the sanction." *Terry,* 886 F.2d at 1353 (internal quotation marks and citation omitted).

## CONCLUSION

For the foregoing reasons, we affirm the district court's judgment, we dismiss Paulo Werlang's individual appeal, and we remand for reconsideration and (if neces-

sary) adjustment of the amount of the contempt award in light of its purpose.