**INDEPENDENT LIVING AIDS, INC., and Marvin Sandler, Plaintiffs,**

v.

**MAXI–AIDS, INC., Harold Zaretsky, Mitchell Zaretsky, Elliot Zaretsky and Pamela Zaretsky–Stein, Defendants.**

No. 95 CV 656(ADS)(ARL).

United States District Court, E.D. New York.

Nov. 26, 2004.

The Dweck Law Firm, LLP by Jack S. Dweck, Esq. and Richard A. Hubell, Esq., New York City, for Plaintiffs.

Michael D. Solomon, Esq., Levittown, NY, for Defendants Maxi–Aids, Inc., Harold Zaretsky and Elliot Zaretsky.

Berkman, Henoch, Peterson & Peddy, P.C. by Joseph E. Macy, Esq., Garden City, NY, for Defendant Mitchell Zaretsky.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court are the Plaintiffs' objections to the July 3, 2003 Report and Recommendation ("Report") by United States Magistrate Judge Arlene R. Lindsay recommending: (1) that the Court find that the Defendants are in contempt of the Court's April 4, 2002 preliminary injunction, with regard to the use of the phrase Independent Living Aids on the Affiliate Corner page; and (2) that the Court impose sanctions for compensatory purposes in the form of a fine of $502.80.

Also before the Court is the Plaintiffs' request that "an award ... be made for all post-judgment legal costs and expenses incurred by the Plaintiffs by virtue of the contemptuous conduct of the Defendants."

## I. BACKGROUND

### A. Underlying Proceedings

This case, which was commenced in 1995, arose out of claims by Independent Living Aids, Inc. ("ILA") and Marvin Sandler (Sandler") (collectively, the "Plaintiffs") against Maxi–Aids, Inc. ("Maxi–Aids"), Harold Zaretsky ("H.Zaretsky"), Mitchell Zaretsky ("M.Zaretsky"), Elliot Zaretsky ("E.Zaretsky") and Pamela Zaretsky–Stein ("Zaretsky–Stein") (collectively, the "Defendants"). The Plaintiffs alleged that the Defendants engaged in copyright infringement, common-law trademark infringement, unfair competition, false advertising and deceptive trade practices. Both parties compete in the mail-order business specializing in products for the blind, visually impaired and physically disabled. On December 8, 1997, a jury found, among other things, that the Plaintiffs owned a trademark for the phrase "Independent Living Aids." As a result of the jury verdict, on October 24, 1998, the Court issued a permanent injunction enjoining the Defendants from using the Plaintiffs' trademarks in connection with the sale of their products. This judgment was modified on January 24, 2002.

In a Memorandum of Decision and Order dated July 5, 2002, the Court clarified the previously amended judgment and decreed that ILA was the owner of "a valid common law trademark consisting of inverted triangles with the letters ILA inside of a diamond to the left of said triangles and a valid common law trademark for the phrase 'Independent Living Aids.' " *See Independent Living Aids, Inc. v.*

*Maxi-Aids, Inc.*, 208 F.Supp.2d 387, 394 (E.D.N.Y.2002) *aff'd* 69 Fed. Appx. 4, 2003 WL 21246564 (2d Cir.2003). The Court further ordered that the defendants are "permanently enjoined from using the aforesaid (1) the ILA logo which consists of the inverted triangles with the letters ILA inside of a diamond to the left of said triangles and (2) the phrase 'Independent Living Aids' in connection with the sale, offering for sale, distribution, advertising or promotion of any of their products. . . ." *Id.*

The Defendants appealed from the July 5, 2002 second amended judgment. Although the parties on appeal adopted a "non-case sensitive reading" of the phrase "Independent Living Aids," in its decision on May 30, 2003 the Second Circuit indicated that because this Court's use of the term "Independent Living Aids" in its modification order and previous judgments was "purposefully case sensitive, Maxi–Aids is ... enjoined from using the term 'Independent Living Aids' but not the term 'independent living aids.'" *Independent Living Aids, Inc. v. Maxi–Aids, Inc.*, 69 Fed.Appx. 4, 7 n. 1, 2003 WL 21246564 (2d Cir.2003). However, the Second Circuit advised that "because the capitalization issue was not raised before the District Court, the ILA remains free under Fed. R.Civ.P. 60(b) to seek further modification of the Amended Judgment of Permanent Injunction so as to ensure that ILA's trademark additionally applies to the lower-cased term 'independent living aids,' if indeed it is so applicable." *Id.*

Accordingly, the Plaintiffs moved to amend the judgment so that the Defendants would be are enjoined from, using in any form or manner, the words "independent living aids" in lower case letters, and "Independent Living Aids" in capital letters in the business of the Defendants or in the sale or advertising or marketing of their merchandise by the Defendants. The Plaintiffs also sought counsel fees for their attorneys' services with regard to the Defendants' appeal.

By Memorandum of Decision and Order dated February 21, 2004, the Court granted the Plaintiff's motion to amend the judgment and denied the application for attorney's fees. *See Independent Living Aids, Inc. v. Maxi–Aids, Inc.*, 303 F.Supp.2d 327 (E.D.N.Y.2004). The Defendants' appeal of this decision is pending.

**B. The March 12, 2002 Motion for Contempt**

On March 12, 2002, the Plaintiffs moved by order to show cause to hold the Defendants in contempt for alleged violations of October 24, 1998 and January 24, 2002 prior judgments. On March 15, 2002, the parties appeared before the Court pursuant to the order to show cause. At that time, the Court heard oral argument on the Plaintiffs' motion for civil contempt. The Court advised the parties that it would issue a preliminary injunction enjoining the Defendants from using the phrase "Independent Living Aids" until a final determination of these proceedings.

On April 4, 2002, the Court issued a preliminary injunction which provided that the Defendants are "hereby restrained and enjoined, pending the final determination of this proceeding and further order of this Court, from using the phrase and name 'Independent Living Aids' in the sale or marketing of their products, in any shape, form or manner whatsoever. . . ." *Independent Living Aids v. Maxi–Aids, Inc.*, 95CV656, Preliminary Injunction, at 2 (E.D.N.Y. April 4, 2002).

By letter dated April 23, 2003, the Plaintiffs requested a conference on an emergency basis regarding the Defendants alleged violation of the preliminary injunc-

tion. In particular, the Plaintiffs alleged that Maxi–Aids continued to use the phrase "Independent Living Aids" on twenty out of twenty-nine search engines. On April 30, 2002, the Court held a conference to discuss these claims. At the conference, Maxi–Aids stated that after the March 15, 2002 conference, it removed the phrase "Independent Living Aids" from all of its websites and their metatags. Maxi–Aids also stated that it has no control over the actions of third part search engine companies.

On May 24, 2002, the Court issued an oral decision denying the Plaintiffs' March 12, 2002 motion for contempt. By Memorandum of Decision and Order dated July 5, 2002, the Court referred the issue of whether the Defendants violated the April 4, 2002 preliminary injunction to Judge Lindsay. *See Independent Living Aids, Inc. v. Maxi–Aids, Inc.,* 208 F.Supp.2d 387 (E.D.N.Y.2002). In connection with this referral, Judge Lindsay held hearings on November 18, 2002, December 17, 2002, February 26, 2003, and April 7, 2003.

## C. The Report and Recommendation

On July 3, 2003, Judge Lindsay issued a Report and Recommendation. First, Judge Lindsay recommended that the Court not find the Defendants to be in contempt for failing to direct third-party search engines to cease using the phrase "Independent Living Aids" in connection with the Defendants. In that regard, Judge Lindsay found that there was no "clear and unambiguous" order directing the Defendants to do so. Second, Judge Lindsay recommended that the Court find that the Defendants are in contempt of the April 4, 2002 preliminary injunction, with regard to the use of the phrase "Independent Living Aids" on the "Affiliate Corner" page. In connection with that finding, Judge Lindsay recommended that the Court impose

sanctions for compensatory purposes in the form of a fine of $502.80 for the loss of sales of $1,257.93. Judge Lindsay declined to recommend the imposition of "coercive sanctions." Third, Judge Lindsay found that the Plaintiffs' contention that the Defendants' use of the phrase "independent living aids" in the lower case violated the preliminary injunction must fail because "lower case usage of the phrase 'independent living aids' [was then] currently permissible."

The Plaintiffs filed objections to the Report and Recommendation. Those objections challenged Judge Lindsay's findings of fact and conclusions of law on the following grounds: First, the Plaintiffs contend that Judge Lindsay erred in failing to find that there was a clear and unambiguous order directing the Defendants to notify the search engines. Second, ILA objects to the recommended sanctions and argues that the Court should impose a fine of $10,000 per day for a period of at least 45 days, for a total of $450,000 "payable to the United States Government to provide a proper deterrent to the Defendants from engaging in contumacious conduct in the future." Third, ILA objects with Judge Lindsay's findings that "lower case usage of the phrase 'independent living aids' [was] currently permissible."

## II. DISCUSSION

### A. The Standard

 A court is required to make a *de novo* determination as to those portions of the report and recommendation to which objections were made. 28 U.S.C. § 636(b)(1)(c); *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989). The phrase "*de novo* determination" in Section 636(b)(1)—as opposed to "*de novo* hearing"—was selected by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a

magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) Section 636 does not require a court "to rehear the contested testimony in order to carry out the statutory command to make the required 'determination'" *Id.* at 674, 100 S.Ct. 2406. Rather, in making such a determination, a court in its discretion should review the record and could hear oral argument. *See Pan Am. World Airways, Inc. v. Int'l Bhd.of Teamsters*, 894 F.2d 36, 40 n. 3 (2d Cir.1990). Furthermore, a court may in its sound discretion afford a degree of deference to the magistrate's report and recommendation. *See Raddatz*, 447 U.S. at 676, 100 S.Ct. 2406. In light of these principles, the Court will make a *de novo* determination with regard to the specific objections raised by the Plaintiffs.

## B. The Plaintiffs Objections

### 1. The Plaintiffs' objection regarding Judge Lindsay's recommendation that the motion for contempt be denied with respect to notification of search engines.

■ The Plaintiffs first object to Judge Lindsay's recommendation that their motion for contempt concerning notification of search engines be denied. Judge Lindsay found "no support for [ILA's] argument that Judge Spatt issued an order that notification of search engines should be undertaken by Defendants or that Defendants understood this to be part of their obligation."

■ Under 18 U.S.C. § 401(3), the Court is empowered to enforce compliance with its orders through civil contempt. To order such relief, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not

diligently attempted to comply in a reasonable manner." *Perez v. Danbury Hospital, Danbury Office of Physician Services, P.C.*, 347 F.3d 419, 424–425 (2d Cir.2003) (internal quotation omitted); *see also Wella Corp. v. Wella Graphics, Inc.*, 874 F.Supp. 54, 56 (E.D.N.Y.1994). "A 'clear and unambiguous' order is one that is 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'" *Medallic Art Co., Ltd. v. Novus Marketing, Inc.*, No. 99 Civ. 502, 2003 WL 22053139, at *1 (S.D.N.Y. Sept. 2, 2003) (citing *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir.1989) (*cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990)). Moreover, to hold a party in civil contempt the "alleged contemnor 'must be able to ascertain from the four corners of the order precisely what acts are forbidden.'" *Id.* (quoting *Drywall Tapers and Pointers of Greater New York, Local 1974*, 889 F.2d at 395)).

■ Although the alleged contemnor's action need not be willful, *Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 655 (2d Cir.2004), as the party seeking to hold the other in civil contempt, the Plaintiffs must produce "clear and convincing" evidence that the Defendants violated a clear and unambiguous order of the Court. *See Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) ("[T]he clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation has occurred." (citations omitted)); *see also Panix Promotions, Ltd. v. Lewis*, No. 01 Civ. 2709, 2004 WL 421937, at *2 (S.D.N.Y. March 5, 2004).

■ An alleged contemnor can overcome a finding of civil contempt by proving that (1) the order is vague and indefinite

as to whether a particular action is required or prohibited, (2) it lacked knowledge of the terms of the order, or (3) the proof of the violation is not clear and convincing. *Panix Promotions, Ltd. v. Lewis*, 2004 WL 421937, at *2 (citing *Sacco v. Burke*, 764 F.Supp. 918, 921 (S.D.N.Y. 1991)).

The Plaintiffs argue that the following colloquy that took place on March 15, 2002 was a "verbal order" that was "clear and unambiguous with respect to the obligations of the Defendants to notify the various search engines to discontinue the use of the name and phrase 'independent living aids.'" Plfs. Objs. at 2–3:

> The Court: You submit it on notice to your adversary.
>
> Mr. Dweck: I will.
>
> The Court: I'm not even calling it a temporary restraining order. I'm calling it a preliminary injunction.
>
> Mr. Dweck: Your Honor, may I request that [Defendants] be directed, likewise, so I can include it in an order, that they notify all of the search engines to which they have made submissions, that they are not to use the phrase Independent Living Aids.
>
> The Court: Yes.

Tr. March 15, 2002 at 42.

In the Court's view, this colloquy does not clearly and unambiguously require the Defendants to notify search engines to remove the phrase "Independent Living Aids." Rather, it merely indicates that the Court was orally directing the Defendants to make such a request to be included in a subsequent order. However, it is undisputed that the April 4, 2002 preliminary injunction did not contain language directing the Defendants to notify search engines. *See* Plfs. Obj. at 2 ("While the direction to notify the search engines was not contained in specific wording within

the Order of Judge Spatt dated April 4, 2002 . . . ."); *see also* Sandler Aff. in Support ¶ 7 ("Although this Court's written order of April 4, 2002 did not specifically mention notification of the search engines, [the March 12, 2002] motion for contempt was filed by the Plaintiffs because of transgressions involving the search engines.").

The Plaintiffs also contend that Judge Lindsay erred in failing to hold the Defendants in civil contempt for their failure to notify third-party search engines to remove the phrase "Independent Living Aids" from any Maxi Aids web page because "the Defendants understood that they were obligated to notify the search engines and purportedly act upon this order." Plfs. Obj. at 2. However, in the absence of a clear and unambiguous order the Defendants "understanding" is irrelevant to this analysis. The Court finds that the oral language cited above is not sufficient to support a finding of civil contempt.

Because the Plaintiffs have not satisfied the first element of civil contempt, the Court cannot find that the proof of noncompliance was clear and convincing or that the contemnor failed to diligently comply in a reasonable manner. Accordingly, Judge Lindsay's recommendation that the Court deny the Plaintiffs' motion for contempt with regard to notification of search engines is adopted in its entirety.

### 2. The Plaintiffs' objection regarding Judge Lindsay's recommendation that the Court sanction the Defendants in the amount of $502.80 representing ILA's losses.

■ Judge Lindsay found that the Defendants violated the April 2, 2002 preliminary injunction which directed the Defendants to cease using the phrase "Independent Living Aids." In this regard, Judge Lindsay found that the "Defendants did not make diligent and rea-

sonable efforts to comply with Judge Spatt's Order." However, Judge Lindsay declined to order sanctions for a "coercive purpose," namely, for a purpose to force compliance with the preliminary injunction. Rather, Judge Lindsay imposed compensatory sanctions in the amount of $502.80 to make the Plaintiffs whole for their lost profits with regard to the Defendants' contemptuous conduct. This amount was calculated by applying the Defendants' gross profit margin of 40% to their total sales of $1,257 derived from the nineteen affiliates with regard to the use of the words "Independent Living Aids" in the Affiliate Corner. The Plaintiffs object to this remedial sanction and argue that the Court should impose a fine of $10,000 per day for a period of at least 45 days, for a total of $450,000 "payable to the United States Government to provide a proper deterrent to the Defendants from engaging in contumacious conduct in the future." Plfs. Obj. at 10.

 With regard to the imposition of civil contempt sanctions, "constitutional considerations limit the Court's ability to award sanctions that may be deemed punitive in nature." *A.V. by Versace, Inc. v. Gianni Versace, S.p.A., et al.*, No. 96 Civ. 9721, 2002 WL 2012618, at *7 (S.D.N.Y. Sept. 3, 2002). So that sanctions for civil contempt should not be punitive in nature, but rather should be remedial and compensatory. *Manhattan Indus., Inc. v. Sweater Bee By Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir.1989). As such, civil contempt sanctions should be awarded " 'to coerce the defendant into compliance with the court's order and/or to compensate the complainant for losses sustained.' " *Id.* citing *United States v. United Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *see also Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F.Supp.2d 562, 567 (S.D.N.Y.2001). In addition, to

impose sanctions a court need not find that the contemnor's conduct was willful. *Manhattan Indus., Inc.*, 885 F.2d at 5. Moreover, " '[t]he fact that the prohibited act was done inadvertently or in good faith ... does not preclude a citation for civil contempt, for the sanction is remedial in nature.' " *A.V. by Versace, Inc.*, 2002 WL 2012618, at *8 (quoting *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 128 n. 2 (2d Cir.1979)).

 "To the extent that a contempt sanction is coercive, the court has broad discretion to design a remedy that will bring about compliance." *Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 657 (2d Cir.2004) (internal quotation omitted). To determine whether coercive sanctions are appropriate courts must balance: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir.1987).

With respect to the first factor, Judge Lindsay noted that "the character and magnitude of the harm threatened are minimal-the Affiliate Corner is an insignificant aspect of Defendant's business such that Defendants would not make a great deal of money, and thus Plaintiffs could not lose a significant amount of money, through any future use by Defendants of the phrase Independent Living Aids on the Affiliate Corner page." Report at 10. Regarding the second factor, Judge Lindsay found that the "Defendants have been complying with the injunction and have not shown any propensity to violate the injunction in the future." Third, Judge Lindsay

found that although the Court could impose a coercive sanction that is "not overly burdensome," she recommended against sanctions for coercive purposes because the first two factors outweigh the third.

▮ Given the prophylactic nature of sanctions, it is significant that since at least March 29, 2002, the Defendants have been complying with the April 4, 2002 preliminary injunction and there is no evidence or claim that the Defendants are in violation of any of the Court's orders. Despite the fact that the business generated by the Defendants' use of the phrase "Independent Living Aids" in the Affiliate Corner was not a significant portion of the total revenue, the Defendants' use of this phrase in its "Affiliate Corner" could have been detrimental to the Plaintiffs because it may have caused customer confusion in addition to loss of the Plaintiffs' revenue. However, because the underlying purpose of "coercive sanctions" is "to coerce the defendant into compliance with the court's order," *A.V. By Versace, Inc. v. Gianni Versace, S.p.A., et al*, 2002 WL 2012618, at *7, and the record indicates that since March 29, 2002, the Defendants have been in compliance with the Court's orders and there is no indication that the Defendants are likely to violate the Court's orders in the future, the Court finds that "coercive sanctions" are not warranted. *See* Report at 10 –11 ("[D]efendants have been complying with the injunction and have not shown any propensity to violate the injunction in the future.").

Thus the Plaintiffs' request that the Court impose sanctions in the amount of $450,000 "to provide a proper deterrent to the Defendants from engaging in contumacious conduct," Plfs. Objs. at 10, is denied. Accordingly, Judge Lindsay's recommendation that a compensatory sanction in the amount of $502.80 be imposed against the Defendants is affirmed.

**3. The Plaintiffs objections to the findings made by Judge Lindsay that "lower case usage of the phrase 'independent living aids' [was then] currently permissible."**

▮ The Plaintiffs object to Judge Lindsay's recommendation that the Defendants not be found to be in contempt for the use of the lower case phrase "independent living aids." In so recommending, Judge Lindsay stated

[I]n connection with Plaintiffs' appeal to the Second Circuit regarding the District Court's Permanent Injunction of July 5, 2002, the Second Circuit issued a summary order dated May 30, 2003, which stated 'we understand as purposefully case-sensitive the District Court's use of the term.' The Second Circuit stated that while Plaintiffs could seek a modification of the injunction to prohibit use of the phrase in lower case, Maxi–Aids is [currently] enjoined from using the term 'Independent Living Aids' but not the term 'independent living aids.' Thus, in light of the Second Circuit's decision, the lower case usage of the phrase is currently permissible.

Report and Recommendation at 1–2 n. 1. In support of their objections, the Plaintiffs argue that during the March 15, 2002 order to show cause hearing, the Court directed the Defendants to cease using the phrase "independent living aids" in the sale or marketing of their products. The Plaintiffs also contend that it was improper for Judge Lindsay to rely on the Second Circuit's May 30, 2003 summary order in reaching her conclusions because it was issued after the Defendants' allegedly contemptuous order. The Court disagrees. During the March 15, 2002 hearing the following exchange occurred:

The Court: I'm telling you right now, if you don't consent, if the defendants

don't consent to stop immediately using the words independent living aids on any of their advertising, I'm going to direct that you do it and I will issue a temporary restraining order or a preliminary injunction based on this violation immediately. So either you are going to consent or I'm going to order it.

Mr. Solomon: With all due respect your Honor, I'm going to have to ask you to order it.

The Court: I'm ordering it.

Mr. Solomon: Yes, your Honor.

The Court: You submit it on notice to your adversary.

Mr. Dweck: I Will.

The Court: I'm not even calling it a temporary restraining order. I'm calling it a preliminary injunction.

Tr. March 15, 2002 at 41.

Thereafter, on April 4, 2002, the Court issued a preliminary injunction which provided that the Defendants are "hereby restrained and enjoined, pending the final determination of this proceeding and further order of this Court, from using the phrase and name 'Independent Living Aids' in the sale or marketing of their products, in any shape, form or manner whatsoever. . . ." *Independent Living Aids v. Maxi–Aids, Inc.*, 95CV656, Preliminary Injunction, at 2 (E.D.N.Y. April 4, 2002).

Applying the above mentioned standards necessary to find a party in contempt, *see* I(B)(1) *infra*, at the period of time in issue, there was no "clear and unambiguous" order regarding the use of the lower case phrase "independent living aids" that the Defendants violated. Not only was there no mention of lower case versus upper case usage of the phrase during the March 15, 2002 hearing, but the April 4, 2002 preliminary injunction which was submitted to the Court by the Plaintiffs pursuant to Court's direction did not include the lower case version of the phrase. The fact that the Court reporter transcribed this phrase in the lower case is not indicative of the Court's intent regarding which versions of the phrase were enjoined. Thus, neither the March 15, 2002 colloquy nor the April 4, 2002 order constituted a clear and unambiguous order in effect with regard to the lower case usage.

In addition, although dated after the allegedly contemptuous conduct, the Second Circuit's May 30, 2003 summary order is instructive as to the correct interpretation of the preliminary injunction. The fact that the Second Circuit found that July 5, 2002 amended judgment, which used the same terminology as the April 4, 2002 preliminary injunction, was "purposefully case sensitive," *Independent Living Aids, Inc. v. Maxi–Aids, Inc.*, 69 Fed. Appx. 4, 7 n. 1, 2003 WL 21246564, further supports the Court's finding that both the March 15, 2002 colloquy and the April 2, 2002 preliminary injunction did not constitute a clear and unambiguous order with respect to the lower case usage.

Finally, the Court's February 21, 2004 Memorandum of Decision and Order which modified the injunction to also enjoin the use of the lower case phrase "independent living aids" has no bearing on the Court's finding of contempt as this order is dated almost two years after the preliminary injunction in question.

Accordingly, Judge Lindsay's recommendation that the Court deny the Plaintiffs' motion for contempt with regards to the Defendants' alleged lower case use of the phrase is adopted in its entirety.

**B. As to the Plaintiffs' Request for Attorney's Fees and Costs**

 As stated above, the Plaintiffs also request that "an award . . . be made for all post-judgment legal costs and expenses in-

curred by the Plaintiff incurred by the Plaintiffs by virtue of the contemptuous conduct of the Defendants." In connection with this request, the Plaintiffs submitted billing records which reflect the expenditure of time by the Plaintiffs' attorneys in all post-judgment proceedings, including, among other things, the motions for contempt, the defense of an appeal and the attendance at the contempt hearings. The Plaintiffs request more than $108,000 in fees and $14,000 in costs.

At the outset, the Court already addressed the Defendants' request for attorney's fees in connection with the first motion for contempt and defense of the appeal. On June 11, 2001, the Court orally denied the first motion for contempt. In the February 21, 2004 Memorandum of Decision and Order, the Court denied the Plaintiffs' motion for attorney's fees for their defense of the Defendants' appeal.

With regard to attorney's fees for the prosecution of the March 12, 2002 motion for contempt, it is an open question in the Second Circuit whether a finding of willfulness is a prerequisite for an award of attorney's fees. *Shady Records, Inc. v. Source Enterprises, Inc.,* No. 03 Civ. 9944, 2004 WL 1277993, at *7 (S.D.N.Y. June 8, 2004) (citing *North American Oil Co. v. Star Brite Distributing, Inc.,* No. 00–9526, 2001 WL 792643, at *2 (2d Cir. July 9, 2001); *Jaeger v. Massis,* NO. 00–7390, 2000 WL 1678778, at *3 (2d Cir. Nov.3, 2000)). In *Shady,* United States District Judge Gerard E. Lynch pointed out the contrasting dicta of *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1063 (2d Cir.1995) (stating that before awarding attorney's fees, the Court must find that the contempt was willful) and *Weitzman v. Stein,* 98 F.3d 717, 719 (2d Cir.1996) ("[W]illfulness may not necessarily be a prerequisite to an award of fees and costs," though a

finding of willfulness "strongly supports granting them."). In concluding that the willfulness prerequisite should be applied on a case by case basis, Judge Lynch explained that

> In a case . . . where the allegedly contumacious conduct was quickly detected and ended, failure to compensate the expenses of enforcing the order, where the defendants' behavior was genuinely, if not willfully, worthy of a contempt sanction would not only permit the offender to violate the court's order with impunity, but would leave the party that obtained the order worse off for its efforts to secure compliance with its rights and the court's command.

*Shady Records, Inc. v. Source Enterprises, Inc.,* 2004 WL 1277993, at *2.

Although Judge Lynch did not find that contempt by defendant Source Enterprises, Inc. was willful, he awarded attorney's fees because he found that the only measurable harm suffered by the plaintiff was the costs of enforcing compliance. However, the facts in this case are unlike the situation in *Shady,* where Judge Lynch found that the motion for contempt was not a "pointless motion to punish a violation that had already been corrected once it was brought to defendants' attention," *Shady Records, Inc. v. Source Enterprises, Inc.,* 2004 WL 1277993, at *7. Here, the Defendants ceased using the phrase "Independent Living Aids" on their website as of on or about April 30, 2002 several months prior to the July 5, 2002 referral to Judge Lindsay. *See* Tr. Nov. 18, 2002 at 60. Even though the allegedly infringing conduct had ceased, the Plaintiffs continued to prosecute their motion for contempt, apparently with no regard for monetary or judicial economy.

In any event, although there is no excuse for the Defendant's oversight in failing to remove the phrase in its entirety

from at least March 15, 2002, in the Court's view, such conduct was not willful. *See New York State National Organization for Women,* 952 F.Supp. 1033, 1043 (S.D.N.Y.1997) (defining willful contempt as one where the "contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply.") (citing *E.E.O.C. v. Local 638, Sheet Metal Workers' Int'l Ass'n,* 889 F.Supp. 642, 670–71 (S.D.N.Y.1995)); *see also Bear U.S.A. Inc. v. William Kim,* 71 F.Supp.2d 237, 249–250 (S.D.N.Y.1999).

The testimony of Vladimir Ereshkin, the employee at Maxi–Aids responsible for maintaining the company's website, indicates that on or about March 15, 2002 presumably after the Defendants learned of the order to show cause, he was instructed by Elliott Zaretsky, to remove every use of the phrase "Independent Living Aids" from the website. This affidavit, dated April 23, 2002, states that all changes were made by March 20, 2002. Even though Mr. Ereshkin was aware that he could use an "HTML editor" to perform this task which would essentially remove every reference to "Independent Living Aids," Mr. Ereshkin choose to perform this mundane but important task by hand. Although the effort was not completely successful, what is important to the Court is that there was an effort to comply and there is no evidence that the Defendants willfully or deliberately attempted to defy the Court's preliminary injunction. After considering the totality of the circumstances, including the extensive history of litigation between these parties, the Plaintiff's motion for attorney's fees and costs in connection with the prosecution of the motion for contempt of the April 4, 2002 preliminary injunction is DENIED. Having so ruled, the Court warns the Defendants and their counsel that if there is any further violations of the Court's orders,

attorney's fees and costs will be seriously considered.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Report and Recommendation by United States Magistrate Judge Arlene R. Lindsay dated July 3, 2003 is adopted in its entirety; and it is further

**ORDERED**, that the Clerk of the Court is directed to enter judgment in favor of the Plaintiffs against the Defendants in the amount of $502.80; and it is further

**ORDERED**, that the Plaintiff's motion for attorney's fees and costs is **DENIED**.

**SO ORDERED.**